*(Circuit Court of Cook County.)*

## The People ex rel. Wm. N. Sturges

### vs.

## Board of Directors etc. of The Board of Trade of Chicago.

#### (January 17, 1878.)

1. MANDAMUS TO REVIEW ACTION OF BOARD OF DIRECTORS OF VOLUNTARY ASSOCIATION. Where a party has a legal remedy and has not been disturbed in any of his rights as a member of the board of trade except the right to prosecute a member for the non-payment of a claim, but has been deprived of that right by

a decision of the board of directors, that they would not entertain it for reasons deemed by them, in the exercise of their discretion and judgment, to be good and sufficient, it was *held*, that mandamus, would not lie.

2. SAME—PARTY DEFENDANT. Where it was sought to affect the rights of a party and to compel his trial, upon a petition of mandamus to which he was no party, and of which he has had no notice, it was *held*, that under sec. 7 of the mandamus act where a party has an interest in the subject-matter he could be made a party defendant.

3. SAME—ADEQUATE REMEDY AT LAW AS DEFENSE. An adequate remedy at law is a defense to an application for a writ of mandamus where such writ would not afford a proper and sufficient remedy.

4. SAME—WHAT IS A SUFFICIENT REMEDY. In an application for a writ of mandamus to compel a board of trade to suspend one of its members for failure to pay a debt due to the relator it was *held* that the writ did not afford the relator an adequate remedy as the suspension of the member would not necessarily cause the debt to be paid.

*McCoy & Pratt* and *Monroe, Bisbee & Ball,* attorneys for plaintiff.

*Dent & Black,* attorneys for defendant.

ROGERS, J.:—

If we are to regard the case of *The People ex rel. Thos. B. Rice v. The Board of Trade of Chicago,* 80 Ill. 134, as authority, then it is clear that the petition for a mandamus in this case cannot be sustained and that the answer to it presents a perfect defense. It is the latest decision of our supreme court upon the questions involved in it; and while it has not given satisfaction to many of the members of the bar, and perhaps not to some of the judges of the courts, yet it has not been recalled nor overruled, and is therefore binding upon the inferior courts of the state. It is suggested that the supreme court has consented to a review of the questions, and it is hoped and expected by the counsel in a case now pending in that court that the decision in the Rice case will be overruled. I do not, however, feel that it is becoming in me, if indeed I have the legal right, to disregard and reject

the authority of that case, even if I entertained a different opinion and doubted its correctness.

But without the authority of that case, and admitting that the courts will interfere to control the enforcement of the rules and regulations of such associations, whether merely voluntary in its strictest sense, or created and maintained for the transaction of business or for the pecuniary gain of its members and the acquisition of property and profits in which its members have a direct interest, still does the present case demand the interference of the court, and does the answer filed by the defendants to the petition of the relator, and to which a demurrer has been filed, present a good and sufficient defense. By filing a demurrer the relator admits all the material facts set up in the answer. Those facts are not very different from the allegations of the petition, and as the decision of the demurrer to the answer will, in effect, be the same as upon a demurrer to the petition, I will consider the questions in that view.

The petition is filed by W. N. Sturges, a member of the board of trade of this city, praying for a mandamus to compel the board of directors of said board of trade to proceed and try Geo. Webster, another one of its members, upon a complaint brought under the rules of the corporation.

The complaint is that Webster had refused to comply with a contract made by him with Sturges, for the purchase of corn, setting out that he had been delinquent in payment of margins called and that Sturges had purchased the corn and paid therefor upon Webster's account, and that Webster had refused to pay the bill presented with the complaint. The petition avers that the board of directors had refused to entertain this complaint, and thereby deprived Sturges of the means of compelling, under the rules of the association, a speedy adjustment of the difference between him and Webster, and that he was prevented from the exercise of, and denied, the privileges and rights to which he was entitled as a member of the board of trade.

The right to have Webster tried, for not paying Sturges' bill, is the only one which he claims, was denied to him, and

to enforce that right by mandamus is the only object sought by the petition. As a result of such trial, if Webster was suspended from his privileges and rights as a member of the board of trade, so far as it concern Sturges, is the expectancy, that Webster, to relieve himself from such suspension, would pay the bill of petitioner.

The real object, therefore, of the complaint made to the board and of this petition for mandamus, is to collect or try to collect, a debt. It is not claimed that any other right or privilege of a member of the board of trade has been denied to the relator. He still has the privilege, by his own showing and by that of the answer, of going upon change and trading and being traded with, and in every other respect enjoying all his rights, privileges and franchises; nor is he deprived of any right of, or interest in, the property of the corporation. He has exercised the right to make a complaint against his fellow member under sec. 7 of rule 4 of the board. That complaint was considered as stated in the answer, and upon consideration in a meeting of the board of directors, as shown by the letter of the secretary of the board, copied in the petition and averred in the answer, "it was voted that the complaint . . . be not entertained by the board." This disposition of it, and its return to the petitioner, he regards as a refusal to receive the complaint and a denial of his right to have the trial of Webster upon the complaint; while the defendants set it up as a consideration and disposal of the complaint, by the board, in the exercise of its discretion and judgment. This would seem to be so. It was presented at a meeting of the board; it was considered, and they decided by a vote that "it be not entertained." The reasons for such a disposition of it are not shown. Nevertheless, there was action upon it, and by a vote taken it was disposed of. Whether because the complaint was not sufficiently certain or did not present an offense, in the opinion of the board, which was a subject of complaint and trial, does not appear. Upon examining the complaint, and the rule of the board under which it was made, it appears to me that it was not such as in such cases should be required. That it would be quashed by a

court, if it was on information or indictment, or that a de-murrer would be sustained to it for not sufficiently setting out the offense complained of, I have no doubt. The petition alleges it was made under sec. 7 of rule 4 of the board, which prescribes that, ''When any member of the association has failed to comply promptly with the terms of any business contract or obligation, *and* has failed to equitably and satis-factorily adjust and settle the same, . . . he shall, upon ad-mission or proof of such delinquency, before the board of directors, be by them suspended,'' etc. Now the complaint was ''non-fulfillment of contract as per bill inclosed, which he refuses to pay,'' and ''for delinquency of margins being called which he refused to deposit,'' but there is no statement in the complaint that he had ''failed to equitably and satis-factorily adjust and settle the same.'' It has been seen that he must have failed to comply with the terms of a business contract *and* failed to equitably and satisfactorily adjust and settle the same before he could be suspended. That he failed to furnish margins, and upon relator's buying in and paying for the corn, upon Webster's account, and Webster's failure to pay the bill—in other words, his failure to comply with the terms of the contract—is not, under sec. 7 of rule 4, an offense for which he could be tried and suspended. There must have been also a failure to ''equitably adjust and settle the same.'' This is not a technical but a substantial objection to the com-plaint. A member may refuse to pay a claim because it is unjust, in whole or in part, without an infraction of the rule in question. But if there is a claim of failure to fulfill a con-tract, and he also refuses and fails to adjust and settle it, then he is liable to the discipline prescribed.

To refuse to fulfill a contract or to pay a bill is one thing, to refuse to adjust and settle a difference is another and very different thing, and both must concur to make the offense de-scribed in the seventh section.

To adjust and settle requires concurrent action, an agree-ment by the parties and settlement of differences. The rule contemplates an effort between the parties to adjust and set-tle a difference which may arise in a business contract, and

such an effort is required by the letter and spirit of the rules and regulations of the board, and is consonant with the principles and usages of honorable and fair dealing merchants. The members of the board of directors, while not lawyers, are no doubt very intelligent business men, and could hardly fail to see that such a complaint as was presented against Webster did not contain a charge of failure "to comply with the terms of a business contract" *and* a failure (also) "to equitably and satisfactorily adjust and settle the same." They were required, then, to decide that the complaint should be dismissed or entertained. If such was the reason, then it was clearly the exercise of a sound discretion and correct judgment, in the exercise of which, it is well settled, courts will not interfere. Mandamus "will not lie to compel an inferior court to reverse its action in refusing to dismiss" (or, I add, in dismissing) "a bill of complaint, since in passing upon such dismissal the court must necessarily have exercised its judicial functions." High on Extraordinary Remedies, sec. 173.

Nor will it lie to control corporate officers in the discharge of duties concerning which they are vested with discretionary powers, id. sec. 278. The power exercised by the board in the Webster complaint was quasi-judicial, conferred by the rules of the board, to which the relator subscribed and by which he is bound.

Then there is a specific legal remedy for relator's grievance —he can recover his debt, if it exists, by an ordinary action at law. "The firmly established rule and fundamental principle underlying the entire jurisdiction (of the courts), that the existence of another specific legal remedy, fully adequate to afford redress to the party aggrieved, presents a complete bar to relief by the extraordinary aid of a mandamus," unless the recent statute of this state, in force from July 1, 1874, has changed that rule. Sec. 9 of that act provides that "the proceedings for a writ of mandamus shall not be dismissed nor the writ denied because the petitioner may have another specific legal remedy where such writ will afford a proper and sufficient remedy." But, if the writ will not afford a

*sufficient remedy,* then the rule remains, and the writ will or should be denied. What, then, is the remedy sought, and would it be sufficient for the purpose of the relator, viz., to collect the debt claimed to be due him. He seeks to compel the board to try Webster, and if they find him guilty, the award or judgment would be, not to pay the debt, but to suspend him from his privileges as a member of the corporation until he did pay it. The suspension would not *necessarily* afford the remedy. Webster could abide the suspension and still refuse to pay the debt, and the board would be powerless to compel the payment. They could threaten and punish by their suspension, and that would be all, so far as they were concerned, and the relator would then be compelled to resort to a court, with power not only to give judgment, but execute it by sale of the property of the debtor. It is true the fear or the fact of suspension might lead to an equitable adjustment and settlement of the claim, but that possibility or even probability is hardly a proper and sufficient remedy. If not, then the court can properly deny the writ, because the relator has a specific legal remedy, which he can pursue. Again, this writ is not a writ of right—it is discretionary with the court whether to award it, *People v. Hatch,* 33 Ill. 9. In this case Sturges has a legal remedy—he has not been disturbed in any of his social, business or property rights as a member of the board of trade except the right to prosecute a member for the non-payment of a claim (which may or may not be disputed), *but* has been deprived of that right by a decision of the board of directors, that they would not entertain it, for reasons deemed by them, in the exercise of their discretion and judgment, to be good and sufficient, and that, in a matter not materially, if at all, affecting the public interest, but of private interests, namely, to the relator and Webster. And it does not appear to me to be a case which requires the exercise of a discretion or the resolving of doubts, if I had any, in favor of the petitioner.

Another thing entitled to consideration is, that it is sought to affect the rights of Webster and to compel his trial, upon a petition for mandamus to which he is no party, and of which

he has had no notice. Under sec. 7 of the mandamus act (as he has an interest in the subject-matter), he could be made a party defendant.

The facts set out in the answer, without reference to the allegations as to the status of Sturges as a member of, or his past relations to, the board, present, in my opinion, a clear defense to the petition. He is a member of the association, notwithstanding the suit referred to in the answer, and I have not, therefore, given any weight to the facts set out in the answer upon that subject. The demurrer to the answer is therefore overruled. Demurrer overruled.

### NOTE.

Before the reading of this opinion Judge Rogers stated to counsel that had he had formed his judgment of the case and wrote out his opinion before the decision of the Supreme Court in *Sturges v. Board of Trade*, filed at Ottawa, January 21, 1878 (86 Ill. 441), which case counsel had suggested brought into review the decision in *Rice v. Board of Trade*, 80 Ill. 134, and that he had supposed the counsel would take some action, either by petition to dismiss or by defendants to amend the answer by setting out the fact that Sturges was no longer a member of the board of trade; but no suggestion being made by either counsel, Judge Rogers read the opinion as prepared. —Ed.